## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

N.N.,

      Plaintiff,

         v.

TUNKHANNOCK AREA SCHOOL
DISTRICT, et al.,

      Defendants.

CIVIL ACTION NO. 3:10-CV-1080

(JUDGE CAPUTO)

## MEMORANDUM

This case presents the question of whether an action alleging an unreasonable search and seizure of a student's cell phone containing images protected by the First Amendment states a claim for equitable relief against county officials and a claim for damages against the county. Because it does, the defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) will be denied.

### I. Background[1]

At all relevant times, N.N. was a minor student at Tunkhannock Area High School. The high school had a policy requiring cellular phones to be turned off and stored in lockers at all times during the school day. The 2008-09 school handbook detailed the penalties for violating this policy. A first-time offender would have her cell phone confiscated and returned at the end of the day and would additionally serve a 90 minute Saturday detention. The second infraction would warrant a three-hour Saturday detention and return of the cell phone

---

[1] For purposes of deciding this motion, the facts in the complaint are assumed to be true, and are stated in the light most favorable to the plaintiff.

only when retrieved by the child's parent, and should a student violate the policy a third time, the student would face a one-day suspension and permanent ban from possessing a cell phone on school property.

Notwithstanding this policy, on January 23, 2009, N.N. placed a call from her cell phone while on school property. As the phone rang, but before the recipient had answered, teacher Melissa Sherman confiscated N.N.'s phone. Later that day, N.N. was paged over the public announcement system and told to report to the principal's office. After completing her math examination, she went to the principal's office.

When she arrived, she found the principal, Mr. Ellsworth, sitting at a table with the school nurse. He explained that the nurse was present because he felt that a woman should be in the room. Ellsworth then launched in to the reasons N.N. had been paged: Ellsworth had gone through her cell phone contents, discovered what he believed to be inappropriate photographs stored in the phone's memory, and had handed the phone over to law enforcement authorities. After expressing her outrage at what she felt was an intrusion into an intimate sphere, N.N. was suspended for three days.

As it turns out, N.N. had taken photographs of herself with her phone's built-in camera.  In most of the photographs, N.N. is fully clothed, but several include N.N.'s exposed breasts, and one indistinctly reveals her pubic area. No photographs include N.N.'s genitalia. Aside from one photograph taken by a female friend, the photographs were taken by N.N. alone, and were intended for the sole consumption of herself and her long-term boyfriend. The photographs were taken off school property, were saved to the cell phone, were never emailed or uploaded to the internet, and were not shared with other students. To access the photographs, which are not immediately visible, school officials must have "clicked" on at

least three "menu" selections.

Following N.N.'s meeting with Ellsworth, she and her mother reported to the Wyoming County District Attorney's Office to try to retrieve the cell phone on January 26, 2009. There, they met with Chief Detective David Ide. Ide explained that the phone was unavailable because it had been sent to a crime lab in Delaware. Ide asked N.N. to write and sign a statement he dictated. N.N. was not given a copy of the statement. Ide further stated that he had reviewed the photographs before the meeting, and told N.N.—after her mother had stepped away—that had she only waited until her eighteenth birthday, she could have submitted the photographs directly to Playboy magazine instead of getting in trouble. He concluded the conversation by suggesting that N.N. contact him, and told her "I'll get you your phone back, [N.N.]" while winking at her.

Shortly after this meeting, N.N., along with other students whose cell phones had been similarly searched, received a letter from George Skumanick, who at that time was the district attorney for Wyoming County. In this letter, Skumanick threatened to bring child felony pornography charges against those who failed to complete a re-education course on sexual violence and victimization.

Following receipt of this letter Skumanick held an informational meeting with the students whose phones had been confiscated by the school, as well as their parents, at the Wyoming County courthouse on February 12, 2009. Skumanick advised the parents that their children had engaged in criminal conduct and presented them with a stack of photographs that had been printed from the students' confiscated cell phones. Skumanick permitted the parents to view these pictures. Instead of creating a separate file for each student, Skumanick kept the pictures as a single stack of cards which he repeatedly flipped

3

through while searching for a particular student's image, which included at least fifteen printed photographs of N.N.

Skumanick explained that he intended to charge the students who had taken "explicit" photographs of themselves, or possessed photographs of others, with child pornography unless they agreed to complete the sexual violence and victimization re-education course.

Finding herself caught between prosecution and taking the re-education course, N.N. opted for the latter. A few days before she attended the re-education course, N.N.'s cell phone was returned to her. It was then that she discovered that all images stored on her phone—including not only the photographs at issue, but family pictures as well—had been deleted.

To complete the re-education course, N.N. had to attend five class sessions, each lasting several hours, on various dates through May 6, 2009. N.N. felt out of place in a class intended for victims of sexual abuse and disagreed with much of the course philosophy.  In fact, far from feeling like a victim of sexual abuse, N.N. felt victimized and distressed by the county's harassment and intrusion into her privacy. In addition to the emotional costs N.N. incurred, she had to miss several hours of work to attend the course, losing approximately $71.50 in wages, and was additionally charged an enrollment fee of approximately $100. Furthermore, the homework assigned for the re-education course took time away from her high school studies, and she was required to write papers on topics she found objectionable.

N.N. has never been charged with any crimes related to the photographs.

On May 20, 2010, N.N. filed the present action against the school district, Principal Ellsworth, former District Attorney Skumanick, Chief Detective Ide, present Wyoming County District Attorney Jeff Mitchell, Wyoming County, and ten unnamed John Doe defendants.

4

The school defendants were voluntarily dismissed from the case. There are two claims against the remaining defendants. First, N.N. seeks prospective equitable relief against the county officials based on their alleged continued possession of the photographs depicting N.N., which she claims were the fruits of an unreasonable search and seizure.

Second, N.N. brings a claim against the county pursuant to 42 U.S.C. § 1983. She asserts that the search and seizure of her phone, threatened prosecution, and re-education course violated her First and Fourth Amendment rights, as applied to the states through the Fourteenth Amendment.

Skumanick, Ide, Mitchell, and the county answered the complaint. They presently move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). They raise the affirmative defenses of absolute immunity and qualified immunity. They urge that because N.N. alleges prosecutorial actions for which the defendants are agents of the state, the county is not liable under § 1983.  In the alternative, they argue that N.N. fails to state a claim upon which relief can be granted.  The motion has been fully briefed and is ripe for review. For the reasons explained below, the motion will be denied.

## II. Discussion

## A. Legal Standard on a Motion for Judgment on the Pleadings

Judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The facts presented in the pleadings are viewed in the light most favorable to the nonmoving party. *Id.* "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."

*Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211. Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

The Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs.*

6

*v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

In deciding a motion for judgment on the pleadings on the basis of failure to state a claim, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion. *Id.*

## B. Immunity Doctrines are Inapplicable Where Only Equitable Relief is Sought

The defendants invoke immunity defenses. They argue that the previous and current district attorneys, Skumanick and Mitchell, are entitled to judgment in their favor because they enjoy absolute prosecutorial immunity. They further argue that the claims against Ide, Skumanick, and Mitchell are barred by qualified immunity. In response, the plaintiff argues that neither immunity doctrine applies to the present action because only prospective equitable relief is sought against Ide, Skumanick, and Mitchell.

"[T]he policy rationale for granting qualified immunity is that 'we do not want officials to make discretionary decisions with one wary eye on their pocketbook.'" *Acierno v. Cloutier*, 40 F.3d 597, 608 (3d Cir. 1994) (quoting *Prisco v. U.S. Dept. Of Justice*, 851 F.2d 93, 96 (3d Cir. 1988)). In keeping with this rationale, both absolute prosecutorial immunity and qualified immunity only apply when monetary damages are sought; these doctrines are inapplicable when equitable or injunctive remedies are at issue. *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 462 (3d Cir. 1996) (absolute immunity).

Because no money damages are sought against Ide, Skumanick, and Mitchell, neither

7

absolute nor qualified immunity applies.  Thus, judgment in favor of these defendants on immunity grounds will not be granted.

The defendants further argue that because the defendants' actions deserve immunity protections, the case against the county cannot be maintained. In support of this assertion, they cite to *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). However, *Heller* simply held that an award of damages against a municipality cannot survive when a jury found that the plaintiff suffered no constitutional injury. *See id.* Here, N.N. alleges that the county had unconstitutional policies related to training, which caused her injuries. In such a case, *Monell* liability is appropriate and is not foreclosed by immunity doctrines.

## C.  Viewing the Complaint's Allegations in the Light Most Favorable to the Plaintiff, Skumanick Was Not Acting as an Agent of the State

The defendants argue that because Skumanick was acting in his role as prosecutor, he was acting as an agent of the state and not the county. Thus, they argue that the county cannot be liable for his actions.

A local government is liable under § 1983 when the execution of its policy made "by those whose edicts or acts may fairly be said to represent official policy" inflicts a constitutional injury. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). But when a local government official acts as a *state* policymaker, the local government cannot be responsible for the actions which constitute *state*, and not *local*, government policy. *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997). Discerning whether a policymaker acts for the state or county is not an "all or nothing" inquiry. *Id.* at 787.  Instead, courts look to whether an official was acting as a final policymaker for the county "in a particular area, or on a particular issue." *Id.* This analysis depends in part on how the

8

official's functions are defined by state law. *See id.* at 786; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[W]hether a particular official has "final policymaking authority" is a question of *state law*") (emphasis in original).

Although the Pennsylvania Constitution describes district attorneys as county officials, *see* Pa. Const., Art. IX, sec. 4,   state law provides that district attorneys serve as a replacement for state deputy attorneys general and "conduct in court all criminal and other prosecutions, *in the name of the Commonwealth* . . . ." 16 P.S. §1402(a).  This "historical foundation . . . compel[s] the conclusion" that when a district attorney is engaged in the prosecutorial function of enforcing penal statutes, he or she is acting as a policymaker for the state and not the county. *See Williams v. Fedor*, 69 F. Supp. 2d 649, 660 (M.D. Pa. 1999) , *aff'd*, 211 F.3d 1263 tbl. (3d Cir. 2000).

On the other hand, the Third Circuit has found that district attorneys act as agents of the county when administering their offices and cannot claim Eleventh Amendment immunity for such conduct. *See  Carter v. City of Phila.*, 181 F.3d 339 (3d Cir. 1999).  This Eleventh Amendment analysis is persuasive that for policymaking purposes as well, district attorneys enjoy "a dual or hybrid status." *See Carter v. City of Phila.*, 181 F.3d 339, 353 (3d Cir. 1999) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996)). District attorneys act as agents of the state when they "execut[ing] their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime." *Coleman*, 87 F.3d 1491, 1499 (3d Cir. 1996). When a district attorney, however, engages in purely administrative tasks unrelated to prosecutorial functions, he or she "in effect acts on behalf of the county that is the situs of his or her office." *Id.*

"The recurring theme . . . is that county or municipal law enforcement officials may be

State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices." *Carter*, 181 F.3d at 352. When the function involves "local policies relating to training, supervision and discipline," it is properly characterized as administrative, but when it involves "decisions about whether and how to prosecute violations of state law," it is prosecutorial. *Id.* at 352.

Here, the plaintiff argues that Skumanick acted as a county policymaker by directing the searching of N.N.'s phone; the downloading, printing, and disseminating of N.N.'s photographs; and the interrogation and coercing of N.N. to sign a statement. N.N. argues that these actions constituted policies of improper investigation. The complaint additionally alleges that Skumanick made a policy of "fail[ing] to require or provide appropriate in-service training or re-training of officers who were known to have improperly investigated" the school's reports of indecent images on student cell phones. The plaintiff further disclaims seeking liability based on the charging decision.

The plaintiff argues that searching for evidence and training subordinates in proper search procedures do not qualify as prosecutorial acts. She cites to *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), for the principal that advising and instructing police officers and gathering evidence before initiating a prosecution is an administrative, not prosecutorial, function.

In *Buckley*, the Supreme Court confronted claims against prosecutors who fabricated evidence during the preliminary investigation of a rape and murder and made false statements at the press conference in which they announced the indictment. *Id.* at 261. The petitioner's actions against the county were not before the Court, which considered only the

10

claims against the prosecutors, who had moved to dismiss on the grounds of absolute prosecutorial immunity. *Id.* at 264. The Court applied the rule that at common law, absolute immunity applies to prosecutorial conduct that was "intimately associated with the *judicial phase* of the criminal process," *id.* at 271 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (emphasis added), and held that because the preindictment fabrication of evidence and the postindictment press conference were not closely tied to the judicial phase, they were not protected by absolute immunity, *id.* at 272.

*Buckley's* immunity analysis, however, is not applicable here, because the question before the Court is not whether Skumanick's actions were so closely tied to the judicial phase of criminal proceedings as to render him absolutely immune from money damages. Rather, the inquiry is whether Skumanick was acting as a policymaker for the *state*, in which case the *county* cannot be liable.

In threatening prosecution against N.N., Skumanick was acting as a policymaker for the state, and no liability can attach to the county for this action. However, the plaintiff pins liability on a failure to train and supervise. As one district court decision noted:

> [I]t has generally been held that when the focus of the plaintiff's civil rights claims are on the administration of the district attorney's office, the district attorney is regarded as an official of the county so that the county may be held liable where the facts establish a failure to train or supervise that evidences a deliberate indifference to the rights of the plaintiff.

*Williams*, 69 F. Supp. 2d at 663 (internal citations omitted). Thus, insofar as N.N. seeks to impose liability on the county for a failure to train related to the investigation of N.N. (as opposed to her prosecution), the claim survives dismissal. *See Spiess v. Pocono Mountain Regional Police Dept.*, No. 3:10-cv-287, 2010 WL 2985959, at *9 (holding that under Pennsylvania law training and supervision related to investigative techniques, as opposed

to prosecutorial decisions or techniques, is a county function).

Because the plaintiff has alleged liability on the basis of improper training related to investigation, she has properly pleaded a claim of municipal liability under *Monell* against the county. The motion for judgment in the county's favor on the grounds that Skumanick was making policy for the state will be denied.

## D. The Defendants' Version of the Facts Does Not Require Dismissal of the Plaintiff's Claim

The defendants also move to dismiss the claims against them for failure to state a claim upon which relief can be granted. They argue that because the initial confiscation and search of the plaintiff's cell phone was done by school officials, the county defendants cannot be liable because they did not, in fact, seize and search N.N.'s cell phone. The plaintiff argues that this argument ignores the complaint's allegations.

The complaint alleges that Ide, Skumanick, and others "illegally" seized and searched N.N.'s cell phone. While this allegation is a legal conclusion and is thus entitled to no deference under *Twombly* or *Iqbal*, the defendants do not argue for dismissal on the basis of inadequate factual allegations. Instead, they argue that they did not, as a matter of *fact*, seize or search the phone and that they had ample probable cause to pursue prosecution. This argument relies on facts outside the four corners of the complaint, and thus is not properly considered on a motion for judgment on the pleadings. Judgment on this ground is unwarranted.

## III. Conclusion

For the reasons explained above, the defendants' motion for judgment on the pleadings (Doc. 18) will be denied.  An appropriate order follows.


July 8, 2011                                        /s/ A. Richard Caputo
Date                                                A. Richard Caputo
                                                    United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

N.N.,

      Plaintiff,

          v.

TUNKHANNOCK AREA SCHOOL
DISTRICT,

      Defendants.

NO. 3:10-CV-1080

(JUDGE CAPUTO)

## ORDER

    **NOW**, this 8th day of July, 2011, **IT IS HEREBY ORDERED** that the defendants'

motion for judgment on the pleadings  (Doc. 18) is **DENIED**.


                    /s/ A. Richard Caputo
                    A. Richard Caputo
                    United States District Judge